## PHELPS v. GILCHRIST.

An officer, who demands of a receiptor the property attached by another officer, is bound to state his right to make such demand.

If the right he claims is not then questioned, it will be regarded as admitted.

Proof that a written demand was left at the receiptor's dwelling-house, or delivered to him in person, without more, will not be evidence of a breach of the receiptor's contract, or duty, or of a conversion of the property.

THIS was an action of trover, brought to recover the value of a horse, wagon, and two cases of hats, alleged to have been converted by the defendant, on the twenty-fifth day of September, 1851. The property in question was attached by the plaintiff, as deputy sheriff for this county, on the 25th of September, 1851, on two writs, in favor of George A. Whitney against J. B. West & Brothers, and delivered by him to the defendant, on his receipt therefor. The value of the whole property was estimated in the receipt at $175. In one of the actions in which the property was attached, judgment was rendered in favor of the plaintiff, April 15, 1852, for 49,07, debt, and costs taxed at $15,14, and execution issued, which was placed in the hands of Albert Little, a deputy sheriff of this county, who, on the 6th day of May, 1852, left at the dwelling-house of the defendant a written demand for said property. In the other action, judgment was rendered for the plaintiff, October 23, 1852, for $43,39, debt, and $20,14 costs. Execution issued, and was placed

Phelps *v.* Gilchrist.

In the hands of said Little, deputy sheriff, who, on the 23d day of November, 1852, gave to the defendant a similar demand, in writing.

The receipt given to the plaintiff was as follows:

" Franklin, September 25, 1851.

Received of Nathan Phelps, deputy sheriff for the county of Merrimack, for safe keeping, attached, on writs in favor of George A. Whitney *v.* John B. West & Brothers, returnable at the court of common pleas, October term, 1851, to wit:

| | |
|---|---:|
| One horse, valued at | $75,00 |
| One wagon, valued at | 40,00 |
| Two cases of hats, valued at | 60,00 |
| | 175,00 |

All to the amount of one hundred and seventy-five dollars; and I hereby agree to deliver the same to the said Nathan Phelps, or order, on demand, in as good condition as the same is now in, free from all expense to said Nathan Phelps.

DAVID GILCHRIST."

The written demands, left by Little, were as follows:

" Merrimack, ss., May 6, 1852.

To David Gilchrist, Sir: You are hereby required to deliver to me forthwith, in good condition, the following property, viz: One horse, one wagon, and two cases of hats, the same having been receipted for by you, in writs, George A. Whitney *v.* John B. West & Brothers, returnable at October term of court of common pleas for said county.

ALBERT LITTLE, *Deputy Sheriff.*

A true copy. Attest:

ALBERT LITTLE, *Deputy Sheriff.*"

---
---

On the back of this paper is a return, as follows:

" Merrimack, ss.   May 6th, 1852.   I gave to the within named David Gilchrist a demand, of which this is a true copy of the original demand.

ALBERT LITTLE, *Deputy Sheriff.*"

The receipt was delivered by the plaintiff to said Little, previous to May 6, 1852, but no indorsement thereof was made by the plaintiff to said Little, nor any written order made thereon, nor given to said Little.   The execution was first placed by the attorney, who recovered it, in the hands of the plaintiff, who, being out of office, handed the execution and receipt to said Little for service.

The parties agreed that such judgment should be rendered in this case, as the superior court, on the foregoing statement of facts, should determine to be proper.

*W. W. Flanders,* for the plaintiff.

When an attachment has been made and a receipt taken, it stands as security that the property shall be forthcoming when demanded, or the debt shall be otherwise satisfied. *Whitney* v. *Farwell,* 10 N. H. Rep. 9; *Webb* v. *Steel,* 13 N. H. Rep. 237.

1.   Has a proper demand been made?   The officer's return on the attested copies of the original demand, in writing, shows that it was made in time.   The first demand was within thirty days from the time when the first judgment was rendered, and before the second was recovered.

2.   The demand was properly made by Phelps' agent. The officer who made the demand may be considered the agent of Phelps and of the creditor, Whitney, duly authorized to demand and receive the property in question.   1 Ch. Pl. 188; *Payne* v. *Smith,* 12 N. H. Rep. 38; *Bradley* v. *Spofford,* 3 Foster's Rep. 446.

His authority was not questioned, and could not have been in good faith.   He held the execution for the satisfac-

tion of which this property was held as security. He held the defendant's obligation, and was prepared to release him from it by giving it up, when the property was delivered. This must have reasonably satisfied the defendant that Little was duly qualified, as an agent, to receive the property.

The authority to receive payment is inferred from the possession of a negotiable security; and in regard to bonds and other securities, not negotiable, the person who is intrusted to take the security and to retain it in his custody, is intrusted with power to receive the money when it becomes due. 2 Greenl. Ev. 57; *Eastman* v. *Coos Bank*, 1 N. H. Rep. 26.

And in case of a demand by an agent, if the individual makes no objection at the time, he is precluded from afterwards objecting, where the demand is ratified and suit brought upon it. *Payne* v. *Smith*, 12 N. H. Rep. 30.

If the defendant withheld the goods from plaintiff's agent, when demanded, he asserted a control over the property inconsistent with the plaintiff's right. *Bradley* v. *Spofford*, 3 Foster's Rep. 446.

3. Whitney had a right to demand the property by any officer. It was taken into the custody of the law, for his benefit. It matters not whether it was in Phelps' hands or in the defendant's; it was put there for Whitney's benefit.

If Little had a right to demand the property of Phelps, he could also from Phelps' agent or servant. The written contract of the receiptor could make no difference; it expressed nothing more than what the law would imply against any servant or agent of the officer. *Odiorne* v. *Colby*, 2 N. H. Rep. 70. Whitney had, after making a demand by Little, a right to institute this suit, independent of Phelps, who cannot discharge or control it in any way. *Webb* v. *Steel*, 13 N. H. Rep. 236.

The receipt was taken officially, on the service of process, and will avail the officer or creditor on demand within thirty

---
Phelps *v.* Gilchrist.
---

days from judgment. *Bruce* v. *Pettengill*, 12 N. H. Rep. 346.

The court will look beyond the mere forms of expression, to the intent of the parties, and give effect to that intent. *Down* v. *Smith*, 3 N.H. Rep. 302.

*Fowler*, for the defendant.

I. Little had no sufficient authority to make any demand upon the receipt in this case. By the express terms of the receipt, the defendant agreed to deliver the property receipted for to Nathan Phelps, or his order. The case finds that Little had no authority from Phelps to demand the property within the terms of the contract. Phelps did not direct the property to be delivered to Little, even by a blank indorsement of the receipt. Wherever the words of a contract, as in this case, are clear and definite, it is to be construed according to the grammatical construction and ordinary meaning of the words, and its apparent import. Story on Con. 153; 2 Ev. Poth. 37; Co. Litt. 147, a. Here the words " or order," by universal usage, are to be construed as meaning written order. Such is the legal construction of the phrase in all business contracts.

The defendant occupied toward the plaintiff the relation of a mere depositary, receiving the property for safe keeping, to be delivered to him, or order, on demand. *West* v. *Murph*, 3 Hill, (S. C.) 284; 4 U. S. Dig. 241.

A demand must be made by the person in whom the actual ownership of the goods is vested at the time of the conversion. 1 Ch. Pl. 150. A special property vests in a deputy sheriff, in goods attached, by reason of the attachment. 1 N. H. Rep. 289. But the doings of an officer, in respect to personal estate, cannot amount to a valid attachment, unless the articles are taken into his actual custody or exclusive control. 1 Wils. 44; 9 Johns. 132; 5 Mass. Rep. 157, 163, 271.

The case finds a special property to have been acquired

in this manner, of the goods specified in the receipt, on the 25th day of September, 1851, but shows no demand to have been made by him upon the defendant, to deliver up said goods according to the tenor of the receipt. Little, the person making the demand, having no special property, and no authority being shown from the plaintiff to him to perform such acts, by an indorsement of the receipt, the defendant was not obliged to deliver up said goods only to the plaintiff, for whom he promised to retain them.

If a thing be bailed, and a third person, with the permission of the bailor, who is entitled to reclaim the thing, should demand it of the bailee, but should give no evidence of his right to do so, the refusal of the bailee to deliver up the thing upon such demand, will not amount to a wrongful conversion. *Beckley* v. *Howard*, 2 Brevard 94; 2 U. S. Dig. 879.

II. If Little had had authority to make it, the demand is insufficient for want of certainty, especially as it was left at the defendant's house, in his absence, and no opportunity was given for explanation. It does not state to whom the property was receipted, for whom it was attached, when the writs on which it was attached were returnable, or how Little became entitled to demand it. None of these things being stated in the demand, which the defendant was entitled to know, he was at liberty to disregard it altogether.

III. The demand was insufficient, for the reason that it was left at the defendant's house, instead of being delivered to him in person, nothing appearing in the case to show that the plaintiff avoided for the purpose of preventing a demand. The demand should have been personal; the defendant did not agree by the receipt to carry the property to Phelps or his agent. All he agreed to do was, to deliver the property to Phelps, or his authorized agent, when called upon to do so. It does not appear that such a call has ever been made, and, therefore, there is no breach of contract. There could be no conversion until a refusal to deliver, and no refusal

until a demand made. No demand was made, therefore there cannot have been any conversion.

IV. If the demand be holden sufficient, and that Little had an authority to make it, it could only be good for the amount of the execution in his hands, when it was made.

V. The demand made upon the second execution was too late, not having been made within thirty days from the rendition of judgment. The thirty days for which the property is holden after judgment, expired with the 22d of November, judgment having been rendered on the 23d of October. No demand on the second execution having been made till November 23d, the attachment was dissolved. Rev. Stat. ch. 184, §§ 33, 34, and ch. 1, § 25.

BELL, J. The practice of delivering property attached to a bailee for safe keeping, must have been coeval with the practice of making such attachments. It is, in its nature, a simple deposit, a delivery of the property to be kept by the depositary, without compensation, until called for by the attaching officer. No particular agreement was necessary, and no writing was required. The convenience and safety, perhaps of both parties, would render some writing, showing the facts necessary, in cases where the number of the articles attached was considerable. In general, a simple receipt, admitting that the articles enumerated had been delivered by the officer to the receiptor for safe keeping, and to be returned, on request, would be the most natural form of such a writing. Various circumstances, which might become material to the parties, would as naturally be introduced, as their utility came to be seen, until every thing supposed to be otherwise likely to be an occasion of dispute, would be mentioned. Thus in the receipt before us, the date, the several articles attached, and their value, the name of the officer, the names of the parties to the action in which the attachment is made, the court and term to which the action is returnable, and the fact that they are to be kept without expense, and to be

delivered to the officer, or his order, on demand, are all stated. There is ordinarily, however, nothing in such a receipt which changes the duties or obligations of the parties, from what they would be on a simple deposit, without any writing whatever. Usually the sole advantage of the writing is, that it contains evidence of facts which, in the event of any controversy, may be disputed, and may sometimes be difficult of proof. But such a receipt is not necessarily a mere receipt and evidence of a deposit. It may contain stipulations in relation to various matters, on one side or the other, varying the obligations and duties imposed by the law on depositaries. The service of keeping the property may not be gratuitous, and the amount of care assumed and of risk incurred by the bailee, may be varied by the agreements of the parties. In the present case, there is nothing which has any appearance of varying the duties of the receiptor from those implied by the law, except the stipulation to deliver the property " in as good condition as the same is now in." As to that point, no question is raised, and it may well be doubted whether the language binds the party further than the common-law duty of a depositary. In other respects, the case shown by the receipt is that of a simple deposit.

The only controverted questions which arise in this case, relate to the alleged breach of the receiptor's contract. The duty imposed by the law upon a receiptor for property attached as a depositary, and the duty recognized by the receipt in this case, is to deliver the property on demand, in common language, *when called for.* Until such demand is made, until the property has been called for, the receiptor has not broken his contract, has not failed to perform his agreement, though he has done nothing but keep the property, and he cannot be charged either upon the implied contract, arising from the bailment, nor upon the express contract contained in his receipt. The present action is trover, in which the substance of the charge is, that the defendant has converted the property to his own use. A demand

and refusal to deliver property to the party entitled to it, is evidence of such conversion, but not conclusive. To make such demand and refusal evidence of a wrongful conversion, it must be such a demand, as to the person, time, place and manner, as would be required to justify the allegation that the contract had been broken.

In the present case, the demand was not made by the attaching officer, the person who made the deposit, but by another deputy sheriff, who held the execution issued on the judgment recovered in the action in which the attachment was made, and who had also in his possession the defendant's receipt, which had been delivered to him by the attaching officer, expressly for the purpose of enabling him to obtain and apply the property to satisfy this execution. By such delivery the attaching officer impliedly gave to Little power to demand, as his agent, the property from the receiptor, to receive it from him, and to discharge him from liability upon his receipt, either by giving up the receipt, or otherwise. Little, then, was the proper person to make the demand, and a refusal to deliver the property, on his demand, if properly made, was a breach of his contract with the plaintiff, and evidence of the conversion of the property.

It is objected, that to entitle Little to make a demand, it was necessary he should have a written order from Phelps to deliver the property to him, or, at least, a blank indorsement of his name upon the receipt. This objection is founded upon the idea that the receipt is evidence of a different contract from that of a mere depositary; that such contract is to take effect only according to its terms, and that by its terms it is a contract to deliver the property to Phelps or his order, which is said, legally and technically, to mean an order in writing only. This, however, does not seem to us to be either a necessary or reasonable construction. The expression of obligations, which the law implies, is merely inoperative. The receipt merely states in writing the implied duties of a depositary, since we understand that

every such depositary is bound to deliver the property to any agent of the bailor, or to any person properly authorised by him to receive it, which would of course include the bearer of an order in writing.

But if the proper construction of the receipt should be held to be that the receiptor in this form stipulates for more than the ordinary duties of a depositary, to deliver the property to the written order of the depositor, we think the additional agreement would not annul or change the implied obligation to deliver the property, not only to the depositor, but to any person who should show himself properly authorised, either in writing or otherwise, to receive it. There is nothing in the receipt which limits the obligation to deliver the property to the attaching officer, and to persons constituted his agents by a written order only.

It is further objected, that the supposed demand stated in the case was insufficient, and ineffectual to prove either a breach of the contract of the receiptor, or a conversion of the property. To make an effectual demand, it is necessary that the person who assumes to make it, as the agent of the attaching officer, should make known to the receiptor the ground on which he claims to act, the right he asserts to call for the delivery of the property. He may act simply as an agent of the attaching officer, who has the right to call for the delivery and return of the property, so long as he remains accountable for it, either to the attaching creditor or to the debtor; or he may act as an officer, and claim the possession of the property as such, to be applied on the execution in his hands, under the authority of the officer who made the attachment. Under ordinary circumstances, very slight evidence would be sufficient to justify a presumption of such authority to an officer who had in his possession the execution on which the property ought legally to be applied, and on which the interest and the duty of the attaching officer require him to apply it.

But the receiptor is not bound, by law, or by his contract,

to deliver the property to any deputy sheriff or other officer who may demand it. He is not bound to take notice of the authority of other officers to have possession of it, until it is distinctly made known to him. He has a right to be satisfied that the stranger, who comes to him to demand the goods, has a legal right to make the demand, so that a delivery to him will discharge his obligations upon his receipt. Any such stranger who comes to him and calls for a delivery of the property, without making known the authority he has to receive it, may be treated as a person without authority. The duty of making known his authority is on him who assumes to make a claim under it. The party who is called upon is under no duty to inquire whether he has an authority or not. It is otherwise as to the evidence of authority, where a claim is made avowedly by one person as the agent of another. In such case, if the party called upon doubts either the existence or the sufficiency of the authority on which another assumes to act, he is bound to make known his doubt, and afford the other an opportunity at once to satisfy him, by producing such evidence of his agency as ought to be reasonably satisfactory. If he is silent, and does not call for any explanation, he will be deemed to have admitted the authority distinctly claimed, and will be precluded to make a question on that point afterwards.

In the present case, from the mode adopted for making the demand by writing, particularly the first demand, which was left at the house of the defendant, apparently in his absence, we need only look at the language of the paper to ascertain how much was claimed by the officer, as to his authority; and by that it appears that the demand was made by Little, as a deputy sheriff only. He does not claim to be the agent of Phelps, for no reference is made to him; nor to be the holder of the receipt; nor to have possession of the execution, to which the property attached was applicable. The defendant was not then bound, if he had oppor-

Phelps *v.* Gilchrist.

tunity, to make any inquiry as to Little's authority, for he assumed to have no power except that of a deputy sheriff, which was entirely insufficient, and alone gave him no right to take this property from the hands of the receiptor.

But it is further objected, that the leaving of such a paper at the dwelling house of the defendant, was not a demand such as the law requires to charge a man with a breach of contract, or a conversion of property. And this objection seems to us well founded. A demand for these purposes is in its nature personal. It is a call by a person authorized to receive property, for its delivery, made upon the person who is bound to make such delivery. It must be such that the person required to deliver the property may at once discharge himself by yielding to the claim and giving up the property. Leaving a notice at a party's house is not of such a character. It gives no opportunity for the party to do what is demanded, and it would be a sufficient answer for the defendant to make in such a case, that though he was notified to give up the property, no opportunity was afforded him to comply with the notice. No reasonable construction can hold a receiptor bound to deliver the property at any time and at any place where he may happen to be, and still less at any place where, after a demand left at his house, he may happen to be able to find the attaching officer, or his agent. It forms no part of the contract of a depositary, a bailee to keep property without compensation, to carry the property to the depositor in order to return it. It is entirely sufficient, that having kept the property according to his contract in some reasonable and suitable place, he is there ready to deliver it. If a demand is made at any other place, the bailee is entitled to have reasonable time and opportunity to make the delivery at that place, and to require the party who calls for the property to be there to receive it. Any mode of making the demand which precludes the party from availing himself of these rights is clearly insufficient, and therefore the leaving

Phelps *v.* Gilchrist.

a written demand at a receiptor's house, as is certified to have been done in this case, is not evidence either of a breach of the receiptor's contract, or of a conversion of the property.

The same objection seems to apply, and with scarcely less force, where the written demand is delivered to the party himself, unless the evidence goes further. The receiptor is in no default, unless it appears that the object of the demand is brought at the time to his notice; which by no means necessarily results from the delivery of a written notice. A great variety of circumstances may exist, which would prevent such a communication from being at once attended to. No inference is to be drawn against a man from his silence or inaction, unless it appears that he was aware of what was said or done to affect his interest. The burden is upon the party who relies upon such evidence, to establish the fact that the party against whom he desires an inference to be drawn, knew and understood at the time the facts necessary to justify such inference.

A written notice may be a judicious mode of making a demand in any case where it is important to be able to prevent controversy as to the nature and effect of the demand. The party holding a written paper in his hand, and making his demand in the terms of that paper, can readily preserve evidence of the precise character of his demand, but in cases of the kind before us, the essence of the demand consists in the personal and verbal claim, of which the writing may by reference constitute a part, and of the whole of which it may preserve the recollection.

There are cases where the statute contemplates a written demand. Such are the cases of a demand of dower, (Rev. Stat. ch. 205, § 2,) and a demand of a mortgagee of the amount of his mortgage, (Rev. Stat. ch. 131, § 8.) So far as they are recollected, they are all cases where the acts demanded to be done are such as may be done at a future time, and on this account stand on grounds peculiar to

themselves. In general, demands made by officers in the discharge of their duties, stand on the same grounds as those of individuals. Probably the certificates on these demands, if objected to, may not be competent evidence.

Upon the facts stated in the case, there should be judgment for the defendant. As, however, the plaintiff is not confined to his written demand, but may show what occurred, both verbally and in writing, and as he may be able to show that his right to claim the property was known to the receiptor, and that a reasonable opportunity was afforded for the delivery, at the place where the property was deposited, or that the defendant absolutely refused to deliver it, it might be proper to discharge this case, to give opportunity to introduce such proof.